UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

NO.  91-3262

---

SAVE OURSELVES, INC., ET AL.,

Plaintiffs-Appellants,

versus

U.S. ARMY CORPS OF ENGINEERS, ET AL.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before THORNBERRY, GARWOOD, and DAVIS, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiffs-Appellants are a group of non-profit organizations interested in protecting and preserving the waters of Ascension Parish, Louisiana.  They oppose the completion of a regional airport currently under construction in Ascension Parish because they believe that the airport site is a wetlands subject to regulation under Section 404 of the Clean Water Act.  They sued the U.S. Army Corps of Engineers (the Corps) and the Ascension-St. James Airport and Transportation Authority (the Airport Authority), seeking declaratory and injunctive relief.  The district court granted summary judgment against the Plaintiffs, and the Plaintiffs appeal.

## Background

In 1980, the prior owner of the Ascension Parish airport site drained the land in preparation for agricultural use. Between 1980 and 1985, the prior owner devoted 80% of the land to agriculture and farmed crawfish in ponds dug on the remaining 20% of the land. The Airport Authority purchased the land in 1986 as the site for the proposed airport.

On February 23, 1987, an agent for the Airport Authority requested a wetlands jurisdictional determination by the Corps. In a letter dated March 5, 1987, the Corps notified the agent that the area was not subject to the Corps' regulatory authority under Section 404 of the Clean Water Act, *i.e.*, the area was not a "wetlands," and the Airport Authority would not need a Section 404 permit prior to commencing construction of the airport.

On January 10, 1989, the Corps adopted the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (the Federal Manual). On June 30, 1989, the Corps' Regulatory Branch in Washington, D.C. issued a memorandum advising the regional districts that it was developing a Regulatory Guidance Letter (RGL) on the issue of "grandfathering" wetlands determinations issued prior to the adoption of the Federal Manual. Under the draft policy attached to the memorandum, a prior wetlands determination would remain in effect if substantial resources had been expended in reliance on the prior determination. This policy was later formalized in RGL 90-6.

On January 5, 1990, Plaintiff-Appellant Save Ourselves, Inc. requested a determination of whether the airport site was a wetlands under the new Federal Manual. Following the "grandfathering" policy, which was then still in draft form, the Corps notified Save Ourselves that it would not reconsider its prior wetlands determination because the Airport Authority had expended substantial resources in reliance on the prior determination.

Save Ourselves and several other nonprofit environmental groups[1] (Plaintiffs-Appellants herein) filed suit against the Corps and the Airport Authority on July 11, 1990, seeking: first, a declaration that the Corps' policy of grandfathering prior wetlands determinations was invalid because it was not adopted in compliance with the Administrative Procedures Act; second, a declaration that the airport site was a wetlands subject to the Clean Water Act; and third, an injunction against further dredging of the airport site.

The Airport Authority, however, continued construction on the site. The Authority had the vegetation and topsoil removed, the land filled, and the runway laid. According to a preliminary report prepared by the Airport Authority, the Authority had expended $5,310,990 on the construction of the airport as of September 1990.

---

[1] The other Plaintiff organizations are: Louisiana Environmental Action Network, Inc.; Citizens For A Clean Environment; Alliance Against Waste and Action to Restore the Environment; Ascension Parish Residents Against Toxic Pollutants; and East Iberville AWARE.

In December 1990, the Plaintiffs requested a preliminary injunction and an expedited hearing on the injunction issue. The district court disposed of the case, however, by granting the Defendants' motion for summary judgment on the basis of mootness. The Plaintiffs appealed.

## Discussion

In its brief on appeal, the Corps raised for the first time the issue of the Plaintiffs' standing to assert their claims. The Plaintiffs claim disadvantage by the late assertion of this issue. Standing, however, is a jurisdictional issue that must be considered by this Court, regardless of whether it was raised in the district court. See FW/PBS, Inc. v. City of Dallas, 110 S.Ct. 596, 607 (1990); Fairley v. Patterson, 493 F.2d 598, 603 (5th Cir. 1974).

The essence of the Plaintiffs' claim against the Corps is that the airport site is a wetlands under 33 U.S.C. § 404 (as interpreted by the new Federal Manual), and that the Corps' refusal to make a redetermination of wetlands jurisdiction is final agency action reviewable under 5 U.S.C. § 702. Section 702 provides that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702 (1977). The Plaintiffs claim that they were adversely affected or aggrieved by the Corps' abrogation of its duty to declare the airport site a wetlands under 33 U.S.C. § 404, the relevant statute in this case. In order to show adverse effect or aggrievement, "the plaintiff must establish that the injury he

4

complains of (*his* aggrievement, or the adverse effect upon *him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." <u>Lujan v. National Wildlife Federation</u>, 110 S.Ct. 3177, 3186 (1990).

In the Complaint filed in the district court, the Plaintiffs state that they are organizations "interested in protecting and preserving the clean water and public health in Ascension Parish, Louisiana, the State of Louisiana, and the United States."  It is undisputed that this interest falls within the "zone of interests" protected by the relevant provisions of the Clean Water Act.  <u>See</u> <u>Lujan</u>, 110 S.Ct. at 3187.  The Plaintiffs have standing as organizations or associations to protect this interest only if (1) the interest is germane to the purposes of the Plaintiff organizations, (2) any of the Plaintiff organizations' members have standing to sue on their own behalf, and (3) the participation of individual members in the lawsuit is not required.  <u>Hunt v. Washington State Apple Advertising Commission</u>, 97 S.Ct. 2434, 2441 (1977).  The issue here is whether the Plaintiffs' failure to allege any aggrievement more specific than the above-quoted statement of interest prevents them from satisfying the second prong of the requirements for establishing organizational standing.

In its recent decision in <u>Lujan v. National Wildlife Federation</u>, the Supreme Court addressed this prong of organizational standing under similar facts.  <u>See</u> <u>Lujan</u>, 110 S.Ct. 3177 (1990).  The National Wildlife Federation, a citizens'

environmental group, sued the Department of the Interior and the Bureau of Land Management for alleged violations of various environmental statutes occurring in the agencies' administration of the federal land withdrawal program. Id. at 3182. The National Wildlife Federation sought to protect its interest in "recreational use and aesthetic enjoyment" of federal lands. Id. at 3187. Responding to a motion for summary judgment on the issue of standing, the Federation submitted affidavits of several of its members, who claimed use and enjoyment of land "in the vicinity of" federal lands affected by the withdrawal program. Id. at 3184-85. The Court found that the facts alleged in these affidavits failed to show an injury sufficiently specific to confer standing upon a member of the organization, and thus the organizational plaintiff did not have standing to assert its claim. Id. at 3187-89.

Applying Lujan to the present facts makes clear that Save Ourselves and the other plaintiffs do not have standing to assert their claim against the Corps. At no time during the proceedings in the district court did the Plaintiffs allege specific facts showing a direct injury to any of its members sufficient to confer standing on the organizations under 5 U.S.C. § 702. The Plaintiffs did not submit affidavits or any other evidence showing that its members were affected by the Corps' refusal to exercise its jurisdiction under the Clean Water Act. By the same token, the Plaintiffs' failure to show aggrievement under the "relevant statute"--here, the Clean Water Act--negates the Plaintiffs' standing to pursue its claims against the Airport Authority under

6

the citizen suit provision of the Clean Water Act.  See 33 U.S.C. § 1365(a).

In their reply brief on appeal, the Plaintiffs requested a remand to the district court to allow the Plaintiffs an opportunity to present affidavits or other evidence demonstrating their standing to sue.  Although we agree that remand for an opportunity to correct the jurisdictional defect would generally be appropriate, see Miller v. Stanmore, 636 F.2d 986, 990-92 (5th Cir. Unit A 1981); 28 U.S.C. § 1653 (1966), we do not find remand to be the appropriate relief in this case.  In oral argument, Plaintiffs' counsel stated that the Plaintiffs did not intend to pursue an injunction against the completion of the airport if the case were remanded to the district court.  The Plaintiffs therefore do not seek any remedy against the Airport Authority; their only "live" claim is against the Corps, challenging the Corps' policy of "grandfathering" prior wetlands determinations.  However, the future application of this policy is too contingent to present a controversy ripe for judicial review.  See American Paper Institute, Inc. v. EPA, 882 F.2d 287 (7th Cir. 1989) ("Nothing but grief could come of trying to review an 'enforcement policy' without knowing how (or even whether) it would affect any plant.").

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment against the Plaintiffs in this case.